Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ABRAHAM SISSOKO,
      *Plaintiff*,

v.

CITY OF NEWARK, *ET AL.*,
      *Defendants*.

Civil Action No. 20-15717

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter arises from Plaintiff's allegations that he faced discrimination, retaliation, and a hostile work environment at the City of Newark's Department of Health and Community Wellness. Presently before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim. The Court reviewed all the submissions in support and in opposition[1] and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons discussed below, Defendants' motion to dismiss is **GRANTED**.

---

[1] Defendants' moving brief will be referred to as "Def. Br.," D.E. 2-1. Plaintiff's opposition brief will be referred to as "Opp. Br.," D.E. 6-1. Defendants' reply brief will be referred to as "Reply," D.E. 7.

I. **FACTUAL BACKGROUND**[2]

The Complaint is not a model of clarity. It includes many allegations against AFSCME Local 2299 ("Local 2299"), a union of which Plaintiff used to be a member, and allegations against Plaintiff's former counsel from a 2016 Equal Employment Opportunity Commission ("EEOC") investigation. However, neither the union nor Plaintiff's former counsel are parties to this litigation. The allegations concerning these non-parties are interwoven with Plaintiff's allegations against Defendants, making it difficult to discern precisely what conduct is allegedly attributable to Defendants as opposed to the non-parties. The Complaint also includes allegations of Defendants' unlawful conduct concerning Gessy Theodore, who is not a party to this action.

The Court recounts the factual background that appears to relate to Plaintiff's claims against Defendants. The allegations in the Complaint seem to center around (1) Plaintiff's 2016 EEOC complaint and subsequent related complaints; (2) Defendants' involvement in union matters; (3) the promotion of Berlyne Vilcant; and (4) Plaintiff contracting COVID-19. The Complaint's "Statement of Facts" jumps between these topics, making it difficult to decipher how the alleged conduct actually unfolded.

a. **The Parties**

Plaintiff Abraham Sissoko is an employee of Defendant City of Newark's Department of Health and Community Wellness (the "Department"). Compl. ¶ 1. He is a fifty-seven-year-old Francophone immigrant from the Ivory Coast. *Id.* ¶ 14. Plaintiff has worked as a Registered Environmental Health Specialist ("REHS") in the Department since January 6, 2003. *Id.* ¶ 12.

---

[2] The factual background is taken from the Complaint ("Compl."), D.E. 1-1. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

The Complaint is brought against ten Defendants: the City of Newark ("Newark" or "the City"); Ras Baraka, individually and in his capacity as the Mayor of Newark; Amiri Baraka, individually and in his capacity as the Mayor's Chief of Staff; the Department; Mark Wade, individually and in his capacity as the Director of the Department; Michael Wilson, individually and in his capacity as a manager and Chief Registered Environmental Health Specialist for the Department; Irene Fryer, individually and in her capacity as a supervisor in the Personnel Services Unit for the City; Ketlen Baptist-Alsbrook, individually and in her official capacity as the Chief of Staff for the City; Kecia Daniels, individually and in her capacity as the Director of the Personnel Unit for the City; and Ligia De Freitas, individually and in her official capacity as Deputy Mayor for the City. *Id.* ¶¶ 1-11.

### b. 2016 EEOC Complaint & Subsequent Related Complaints

In 2016, Plaintiff filed a complaint with the EEOC alleging "that he had been overlooked for a number of promotions on account of his national origin." *Id.* ¶ 19. As a result of the EEOC charge, Plaintiff alleges that he and a coworker, Gessie Theodore, have been retaliated against. *Id.* ¶ 17. Plaintiff alleges that "Defendants have subjected them to harassment through threats of discipline and deprived them of opportunities to receive promotions," including promotions to positions that were unfilled or were provisionally occupied by junior, less qualified employees. *Id.* ¶ 18.

The Complaint goes on to detail a series of complaints Plaintiff made to various Defendants in 2016. In March, he complained to De Freitas "about the lack of promotion opportunities and hostile work environment based on his job" and also "detailed the manner in which the office, including [Defendant] Wilson, was divided based on national origin, specifically between African Americans and people born in other countries, such as Ivory Coast and Haiti." *Id.* ¶ 20. In June,

3

he spoke with an investigator with the Newark Office of the Inspector General about the same issues. *Id.* ¶ 21. On July 18, 2016, Plaintiff and Theodore "met and discussed the same issues with Defendant Freyer and the individual who was serving as the Director of the Department, Dr. Hamdi. *Id.* ¶ 22. Plaintiff alleges that he "also complained to Dr. Hamdi about the hiring of Berlyne Vilcant, an America-born employee, as the Assistant to the Chief REHS, stating that he had applied to, and was more qualified for that role." *Id.* ¶ 23. Plaintiff adds that "Defendants did not participate in any internal investigation" of his complaints. *Id.* ¶ 24.

On July 22, 2016, Defendant Freyer and Dr. Hamdi held a disciplinary meeting with Plaintiff, outside the presences of a union representative, "and sent Plaintiff home based on allegations that he was acting inappropriately at work." *Id.* ¶ 25. A few days later, on July 27, Defendant Wilson "told Plaintiff that he had to meet with Defendant Daniels, the City's Director of the Division of Personnel." *Id.* ¶ 26. Plaintiff met with Defendant Daniels later that day without a union representative. *Id.* ¶ 27. During the meeting, Defendant Daniels wished to discuss Plaintiff's previous meeting with Dr. Hamdi,[3] and Plaintiff explained that "he felt that he did not have equal opportunity to be promoted and that his office was divided based on national origin." *Id.* ¶ 28. Plaintiffs alleges that he continued to raise these concerns through emails to the Mayor's office, including to Defendant Amiri Baraka, as well as to union officials. *Id.* ¶ 29.

"On July 27th, Defendant Daniels alleged that people in Plaintiff's office were complaining about Plaintiff speaking 'Creole' in the office with Ms. Theodore." *Id.* ¶ 30. During meetings on July 22 and 27, 2016, Plaintiff was issued memoranda to enroll in Defendant's Employee Assistance Program ("EAP") and was warned he could face disciplinary action for failing to enroll.

---

[3] It is unclear if the previous meeting was the disciplinary meeting days earlier, or the July 18, 2016 meeting.

*Id.* ¶ 31. Plaintiff alleges that Defendants Freyer and Baptist-Alsbrook "conspired with Defendant Wilson to create an impression that Plaintiff was mentally unstable in retaliation for his protected complaints and the 2016 EEOC charge." *Id.* ¶ 32. His belief that "Defendant Wilson initiated such a conspiracy is based on Mr. Wilson's known practice of manufacturing charges designed to isolate, harass, silence, and terminate disfavored employees, such as those employees not born in the United States." *Id.* ¶ 32. Plaintiff was removed from the East Ward/Ironbound section in retaliation for his protected complaints and for filing the 2016 EEOC charge. *Id.* ¶ 33. Plaintiff withdrew his 2016 EEOC charge in or around January 2018 on advice of counsel after Defendant Wilson, Plaintiff's supervisor, "gave him assurances that he would be considered for a promotion and that none of his less qualified coworkers had been promoted to the open Assistant Chief Inspector position."[4] *Id.* ¶ 38. Plaintiff, however, has not been considered for promotion. *Id.* ¶ 42.

Plaintiff alleges that he made protected complaints in March, June, and December 2019 to the City's Chief of Staff about the national origin discrimination he and Theodore experienced. *Id.* ¶¶ 43, 48. In February 2020, Plaintiff filed a second charge with the EEOC, "alleging retaliation for making protective Complaints and filing an EEOC charge alleging discriminatory practices by Defendant." *Id.* ¶ 56.

   c. **Defendants' Influence over Local 2299**

The Complaint alleges that "Defendants have unlawfully influenced the actions" of Local 2299. *Id.* ¶ 41. In 2015, Local 2299 filed suit on behalf of Plaintiff and seven other REHS employees "alleging that Defendant had failed to pay the Plaintiffs the maximum salary within

---

[4] Plaintiff makes this allegation "upon information and belief" although it is not clear why. Presumably, Plaintiff knows what motivated him to withdraw his EEOC charge.

their range after being employed five years in the position of REHS," in violation of New Jersey law. *Id.* ¶ 15. Plaintiff alleges that the City made a settlement offer and that "it dominated the negotiations between the Plaintiffs over the division of the proposed settlement funds." *Id.* ¶ 16. Defendant Wilson attended the meetings, although he was not a party to the litigation. *Id.* Plaintiff indicates that he expressed his objection to the union's proposal for dividing up the settlement funds on an email chain that included Defendant Wilson and a representative from the Mayor's office. *Id.* ¶ 34.

The Complaint lists numerous additional acts that Plaintiff alleges demonstrate Defendants' unlawful influence over the union "in order to mitigate the risk of claims and unlawful conduct against the City of Newark by avoiding and subverting the adversarial representation relationship as intended under New Jersey law . . . between a union certified pursuant to state law and a public employer." *Id.* ¶ 41. The following allegations are brought against Defendants generally: "[e]xpelling members challenging inclusion of supervisors and members in AFSCME 2299 without explanation or notice"; "[c]ontrolling negotiations between AFSCME Local 2299 and the City Defendants through Ms. Vilcant by promoting her to a supervisory position while she was still negotiating a contract on behalf of Local 2299 with Defendant City in her capacity of President of Local 2299"; "[f]ailing to provide information about open positions and opportunities for job-advancement to Plaintiff and others"; "[w]ithholding Defendant City's personnel records from public scrutiny in an attempt to prevent employees and members of the public from obtaining evidence of Defendants' financial self-dealing"; "[u]sing the collective bargaining agreement to justify their failure to publish job-titles, salary histories, and other personnel records for the benefit of the City Defendants in their official as well as their personal capacity"; "[f]ailing to timely provide notice of job openings to all employee"; benefitting from the assistance of the union's

6

counsel "in order to obscure and prevent scrutiny into negotiations between union members and the public over improprieties and influence by Defendant City and its Officials in how the 2017-2018 settlement funds were distributed among the eight litigants and Defendant Wilson"; "[o]bscuring unlawful actions taken by Defendant Wilson and nonparty Vilcant against Plaintiff by attributing them to actions taken by AFSCME Local 22992"; "[u]sing AFSCME Local 2299 as a vehicle to engage in unlawful actions against Plaintiff, his coworkers, and the public"; "[u]sing AFSCME Local 2299 as a vehicle to prevent Defendant and others from accessing records and information that are a matter of public concern including (1). Jobs Titles; (2). Salary History of Employees; (3). Availability of opportunities for promotion; (3). Dates when a particular job opening was filled"; and benefitting "from efforts by attorney Albert Leonardo who joined the law Firm representing AFSCME 2299 as an associate in June 2019 but was not appropriately screened off from legal matters relating to Plaintiff and his primary witness, Ms. Theodore Gessy against the City Defendants." *Id.*

      The Complaint also alleges that Defendant Wilson

> acted with impunity in his interference with Union business during negotiations relating to the 2017/2018 settlement, caused workplace harassment against Plaintiff and his coworker Gessy Theodore based on race, age and national origin; prevented nonmembers such as Plaintiff and Ms. Theodore to effectively challenge discipline threatened against them; provisionally promoted to the position of Assistant Chief REHS, AFSCME Local 2299's president Berlyne Vilcant without any formal process or intervention from the Union and subsequently required Plaintiff and Ms. Theodore to report to Ms. Vilcant after Plaintiff filed his EEOC complaint in or around February 2020.

*Id.*

      **d. Vilcant's Promotion**

The Complaint indicates that Defendants previously represented to EEOC investigators and Plaintiff that Vilcant "only provisionally occupied the Assistant Chief REHS position," which

is a supervisory position. *Id.* ¶¶ 44-45. No civil service exam was held in connection with the Assistant Chief REHS position. *Id.* ¶ 46. Plaintiff alleges that he is more qualified for this position that Vilcant. *Id.* ¶ 47.

Plaintiff complained to the union on December 30, 2019 that Vilcant "was acting simultaneously as Union President and Assistant REHS Chief even though no civil service exam had been held for that position." *Id.* ¶ 49. Because Defendant Wilson was copied on that email, Plaintiff alleges that the City had notice of his objection to Vilcant's role. *Id.* ¶ 50. Plaintiff further alleges that Vilcant was promoted in or around January 2020 and, at the time, she served as the union's president. *Id.* ¶¶ 51-52. Plaintiff objected both to Vilcant's supervisory role as well as her position as union president; he and Theodore wrote letters to the Mayor's Chief of Staff opposing her promotion without a civil service exam. *Id.* ¶¶ 53-54.

Between September 2019 and May 2020, Plaintiff alleges that Defendant Wilson and Vilcant continuously threatened disciplinary against Plaintiff and Theodore. *Id.* ¶ 55. In or around March 2020, Plaintiff and Theodore were directed by their supervisor to directly report to Vilcant. *Id.* ¶ 57. Plaintiff alleges that on or around April 9, 2020, Vilcant recommended that Plaintiff and Theodore be "disciplined for their failure to perform various assignments as directed by her." *Id.* ¶ 62. Plaintiff challenged this recommendation through his counsel and asserted that it was done in retaliation for his filing charges with the EEOC, challenging Vilcant's status as union president, and making protected complaints to the union and the Mayor's Chief of Staff. *Id.* ¶ 63. On May 8, 2019, Plaintiff, through his counsel, again requested that he and Theodore be reassigned to another supervisor. *Id.* ¶ 72. Plaintiff's counsel also requested that "Defendants" investigate his claim that he was being retaliated against. *Id.* ¶ 81.

### e. COVID-19

Plaintiff reported to "Defendant" that he had symptoms of COVID-19 on or about March 27, 2020 and he later tested positive. *Id.* ¶ 58. He alleges that he contracted COVID-19 at work because he lives alone and did not see anyone outside of work. *Id.* ¶¶ 60-61. In further support, Plaintiff cites to "Defendant's failure to provide personal protective equipment (PPE) while dispatching Plaintiff to locations known to present a high risk of COVID-19 exposure"; "Defendant's failure to observe social distancing during meetings"; and "Defendant's failure to affirmatively conduct testing and contact tracing to prevent against a workplace outbreak[.]" *Id.* ¶ 61. "Plaintiff informed Defendants that [he] had likely contracted coronavirus and, further, was requesting" a reassignment to a taskforce apart from Vilcant. *Id.* ¶ 64. On April 18, Defendants requested that Plaintiff provide medical proof of his quarantine dates and of when he could return to work. *Id.* ¶ 65. Plaintiff alleges that he was still experiencing symptoms of COVID-19 on April 20, when he informed "Agana Boutrose from Surveillance and Prevention-Newark Dept. of Health" that he was unable to attend a March 27 training. *Id.* ¶ 66. He further advised Wilson that he would not be in the office on April 1. *Id.*

Plaintiff indicates that he informed Defendants that he could not get a COVID-19 test because he did not have a fever and a cough but that he expected he would be able to return to work in early May. *Id.* ¶ 69. Through his attorney, Plaintiff advised Defendants on April 30 that he would be cleared to return to work on May 11, and that he needed "to be forwarded any paperwork he needed to fill out." *Id.* ¶ 70. Plaintiff alleges that "Defendants failed to promptly investigate his claims and send him the appropriate forms and recklessly ordered him to return to work or face discipline." *Id.* ¶ 71.

On May 11, Plaintiff returned to work as authorized by his doctor; he immediately requested additional leave because "he continued to experience physical and emotional distress (insomnia, fatigue, dizziness), in part due to Defendant's continued insistence that he return to work while he was fighting off the COVID-19 disease." *Id.* ¶ 73. The Complaint alleges that Plaintiff received permission from Wilson to exhaust his vacation days to recover from his symptoms. *Id.* ¶ 76. While on his approved leave, on May 12, Plaintiff received an email from Defendant Baptist-Alsbrook informing him that Wilson did not approve his leave request and instructing him to return to work on May 18. *Id.* ¶ 77. Through counsel, Plaintiff informed Defendants that he was still experiencing symptoms. *Id.* ¶ 78. Plaintiff's counsel also emailed Defendants' counsel on May 15 and advised that Plaintiff had approval to use vacation days for the rest of the month and "further pointed out that he was expected to perform work under Ms. Vilcant's direction that was outside his job duties." *Id.* ¶ 79. Plaintiff stopped receiving pay on May 18, 2020. *Id.* ¶ 74.

France[5] stated on May 19 that "any change in Plaintiff's condition would require certification from a doctor which would entitle him to take leave under the Family Medical Leave Act, but continued to deny that Plaintiff had received approval to exhaust his vacation days." *Id.* ¶ 80. Plaintiff informed Defendants on May 19 that he was getting tested for COVID-19 and the Complaint alleges he had a test on May 18. *Id.* ¶¶ 82-83. "On May 29th, Plaintiff received his results indicating COVID exposure." *Id.* ¶ 84. He reported the test results to Defendants and "requested that he be provided the appropriate forms to report his COVID-19 illness as a workplace injury." *Id.* ¶ 85. Defendants did not provide the forms until June 7. *Id.* ¶ 86. On June 23,

---

[5] "France" is not named as a Defendant in this case. Based on previous allegations, the Court believes France was counsel for Defendants. *See* Compl. ¶ 79.

Defendants forwarded information about their claims provider and advised Plaintiff that he would be contacted by an agent. *Id.* ¶ 87.

Plaintiff emailed Defendants on June 17 and 23 to inquire about the status of his request to exhaust leave. *Id.* ¶ 90. Defendants responded on June 23 with information as to how the third-party administrator for the City's workers' compensation processes a claim. *Id.* ¶ 91. The Complaint alleges that on July 29, a representative from the third-party administrator requested that Plaintiff be retested at his own expense. *Id.* ¶ 93. Plaintiff's workers' compensation request was denied on September 18, 2020. *Id.* ¶ 95.

Plaintiff submitted a notice of claim on September 2, 2020, stating that the City failed to provide PPE, enforce social distancing, and send Plaintiff the appropriate forms; the notice further stated that the City "recklessly ordered him to return to work or face discipline." *Id.* ¶ 96. Plaintiff alleges that his "recovery has been hampered by the City's failure to timely address his condition, a fact that he attributes to the city's posture of retaliation against him for filing claims with the EEOC." *Id.* ¶ 98.

## II. PROCEDURAL HISTORY

On September 30, 2020, Plaintiff filed the Complaint against in the Superior Court of New Jersey, Law Division, Essex County. D.E. 1-1. The Complaint includes ten counts.[6] Counts One and Two are brought under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:5-1, *et seq.* Compl. ¶¶ 101-09. Count One alleges retaliation. Count Two is labeled as "Free Speech" but also appears to allege retaliation. Count Three is labeled as a NJCRA claim but appears to be brought under the New Jersey Law Against Discrimination ("NJLAD"), alleging retaliation for

---

[6] Although there is a Count Eleven, only ten claims are asserted because the Complaint omits Count Seven.

whistleblowing. Compl. ¶¶ 110-113. Count Four alleges a 42 U.S.C. § 1983 claim for a violation of Plaintiff's First Amendment rights. *Id.* ¶¶ 114-120. Count Five is labeled "Equal Protection—Fourteenth Amendment" and appears to allege a second § 1983 claim. *Id.* ¶¶ 121-123. Count Six brings a claim under the NJLAD, alleging discrimination based on both age and national origin. *Id.* ¶¶ 124-127. Count Eight alleges a violation of the Age Discrimination in Employment Act ("ADEA"). *Id.* ¶¶ 128-131. Count Nine alleges retaliation under the ADEA. *Id.* ¶¶ 132-135. Count Ten alleges a Title VII claim for discrimination based on national origin. *Id.* ¶¶ 136-139. Count Eleven alleges intentional infliction of emotional distress ("IIED"). *Id.* ¶¶ 140-145.

Defendants City of Newark, Department of Health and Community Wellness, Ras Baraka, Amiri Baraka Jr., Mark Wade, and Kecia Daniels were served with a copy of the Complaint and Summons on October 26, 2020. Def. Br. at 1-2. This case was timely removed on November 9, 2020. D.E. 1. On November 16, 2020, Defendants filed the present motion to dismiss. D.E. 2.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and

citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## IV. ANALYSIS

Defendants first argue that the Complaint should be dismissed because it fails to give sufficient notice of the claims asserted, as required by Rule 8(a)(2). Def. Br. at 13-14. Defendants contend that the "allegations of the Complaint fail to provide fair notice as to which Defendant is liable to specific claims asserted in the Complaint." *Id.* at 14. The Court agrees as to Counts One, Two, Three, Four, Five, Six, Eight, Nine, and Ten.

Federal Rule of Civil Procedure 8(a)(2) "requires that a pleading contain 'a short and plain statement of the claim showing the pleader is entitled to relief' sufficient to give the defendant fair notice of the claim and the grounds upon which it rests." *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 430-31 (D.N.J. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 550 U.S. at 555 n.3). "[W]ithout some factual allegation in the complaint,

13

a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Id.* at 233 (quoting *Twombly*, 550 U.S. at 555 n.3). Additionally, mere "conclusory allegations against [d]efendants as a group" which "fail[] to allege the personal involvement of any [d]efendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). Plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When different defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "*which* [d]efendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (emphasis in original). A complaint that contains "impermissibly vague group pleading" will be dismissed. *Id.*

The Complaint is comprised of improper group pleading. Few allegations in the Complaint indicate the actions that were taken by individual Defendants as opposed to "Defendants" generally. While "[i]t may at times be appropriate and convenient for a pleading to use the short-hand term 'Defendants,'" when 10 separate defendants are named "who occupied different positions and presumably had distinct roles in the alleged misconduct, Plaintiff[] cannot merely state that '*Defendants* did *x*.'" *Falat*, 2013 WL 1163751, at *3.

Although the Complaint does include some specific allegations involving particular Defendants, Plaintiff fails to connect these factual allegations to specific Counts. Many of the allegations that name specific Defendants merely allege that Plaintiff either met with or complained to the named parties. *E.g., id.* ¶¶ 20, 22, 27. The Complaint fails to plausibly allege how these acts connect to other allegations in the Complaint. For example, Plaintiff alleges that in March 2016, he complained to Defendant De Freitas about a hostile work environment and the

lack of promotional opportunities.  *Id.* ¶ 20.  But Plaintiff fails to link his complaint with any specific retaliatory act.  Moreover, "[i]t is not the Court's job to laboriously search the Complaint for factual assertions that could, in theory, be used to support one legal claim or another." *Falat*, 2013 WL 1163751, at *3.  As a result, Counts One, Two, Three, Four, Five, Six, Eight, Nine, and Ten are dismissed without prejudice.

Count Eleven, Plaintiff's IIED claim, does not suffer from the same defect as the other Counts because Plaintiff alleges that the Count is based on the conduct of specific Defendants: the Mayor, Baraka, Daniels, and Wilson.  Compl. ¶ 143.  Defendants respond that count should nevertheless be dismissed for failure to state a claim because Plaintiff has failed to allege conduct that is sufficiently extreme or outrageous to serve as the basis for an IIED claim.  Under New Jersey law, to prevail on an IIED claim, "the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1115 (N.J. 2009).  Here, Plaintiff has alleged in a conclusory fashion that he "suffered severe emotional distress" "[a]s a direct result of the outrageous acts, omissions, conduct and discrimination."  Compl. ¶¶ 144-45.  Plaintiff further avers that by "committing the above-described acts," Defendants "intended to and did inflict emotional distress." *Id.* ¶ 142.  Plaintiff does not identify what specific conduct is alleged to be outrageous and, as pled, the Court is unable to identify any conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Taylor v. Metzger*, 706 A.2d 685, 694 (N.J. 1998) (quoting Restatement (Second) of Torts, § 46 cmt. d).  As a result, Count Eleven is dismissed for failure to state a claim.

## V. CONCLUSION

For the reasons set for above, Defendants' motion to dismiss is **GRANTED**. The dismissal is without prejudice and Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiff does not file an amended complaint within that time, the claims will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: May 21, 2021

_____
John Michael Vazquez, U.S.D.J.